**ASPIRA OF NEW YORK, INC., et al.,**
**Plaintiffs,**

v.

The **BOARD OF EDUCATION OF the CITY OF NEW YORK et al.,**
**Defendants.**

**No. 72 Civ. 4002.**

United States District Court,
S. D. New York.

Jan. 23, 1973.

Cesar A. Perales, Herbert Teitelbaum, Stuart R. Abelson, Puerto Rican Legal Defense & Education Fund, Inc., New York City, Marttie L. Thompson, Richard J. Hiller, Community Action for Legal Services, Inc., New York City, for plaintiffs.

Norman Redlich, Corp. Counsel, New York City, for defendants; Frances Milberg, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

Despite the perceptions of Anatole France and others, our laws against stealing bread and sleeping in public places continue to apply equally to rich and poor alike, indifferently producing their unequal consequences. We live in a time, however, of unsettling questions about settled dogma. Among the unevenly developing results has been a growing principle that at least in respect of cherished human interests—as,

for example, the unattained ideal of equal justice for rich and poor, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the right to vote regardless of poverty, Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1963), and the right to be free from even unintended disadvantages at governmental hands because of race or origin, Chance v. Board of Examiners, 458 F.2d 1167, 1170, 1177 (2d Cir. 1972); Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 931 (2d Cir. 1968)—the notion that sharply disparate people are legally fungible cannot survive the constitutional quest for genuine and effective equality.

The plaintiffs herein, abetted by recent developments in the law,[1] complain that "nondiscriminatory," compulsory public education in the English language is a fraud and an affliction, at war with federal law and the Constitution, for people who speak only Spanish and are not taught the language of instruction.

The plaintiffs Aspira of New York and Aspira of America are non-profit corporations organized "to develop the intellectual and creative capacity of Puerto Ricans * * * by motivating [them] to continue their education in the professions, arts and technical fields so that such persons may offer their skills for the betterment of the community."[2] The individual plaintiffs are New York City public school children and their parents, in families recently arrived from Puerto Rico for whom Spanish is their predominant or only language. Defendants are the City Board of Education, various community school boards, and members and officials thereof.

Briefly described, but sufficiently for present purposes, the complaint alleges that the plaintiff children speak little or

---

1. See Note, Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1177–1181, 1183, 1187–1189 (1969).

2. Complaint, pars. 10 and 11.

no English; that the schools they compulsorily attend offer instruction mainly or only in English; that the results for these children are inadequate learning, lowered educational achievement and test scores, a poorer rate of promotion and graduation, and a train of attendant consequences for college entrance, employment, civic participation, and the quality of life generally. It is contended that (1) these practices and disadvantages violate a right to equal educational opportunity vouchsafed by 42 U.S.C. § 2000d, the equal protection clause of the Fourteenth Amendment, and other provisions of the Constitution, and (2) compelled attendance at schools where they cannot understand what is being taught is an arbitrary and capricious imposition offensive to the guarantee of the due process of law. Brought by Community Action for Legal Services, Inc., an agency funded by the Federal Office of Economic Opportunity, together with a private legal services agency, the Puerto Rican Legal Defense & Education Fund, Inc., the suit is pleaded as a class action for some 182,000 children said to be similarly situated. There are extensive prayers for declaratory and injunctive relief including, *inter alia*, a plan of bilingual instruction, other special programs, and a panel of experts to guide the court in supervising the proposed changes.

Defendants characterize this as "a case of first impression" presenting "novel issues."[3] It is perhaps more precise to say that there are already some district court decisions squarely or closely in point, a few favoring the plaintiffs,[4] one favoring defendants.[5] But that is relatively unimportant. More significantly, the cited decisions followed trials and/or detailed stipula-

tions of fact, reflecting, among other things, the evident gravity and complexity of the questions presented.

Nevertheless, the Corporation Counsel of the great city in which this court sits has concluded that the "novel" problems plaintiffs present may be resolved summarily. Urging that the complaint is invalid on its face, so that there is no need either to study or to answer its allegations, he has filed a multi-pronged motion to dismiss. He makes, first, the unsubstantial contention that the complaint is not within the court's subject-matter jurisdiction. Next, without exploring the factual character or interests of the organizational plaintiffs, and without mentioning the Supreme Court's latest pronouncement on the subject, Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), defendants propose to dismiss these two corporations—an essentially trivial step, apart from its prematurity, which would not dispose of the case in any event. Then, in its relatively substantial aspect, the motion says the complaint fails to state a claim upon which relief can be granted. Finally, it is said that a miscellany of parties—the Secretary of Health, Education and Welfare (HEW), the State of New York, and others—are indispensable, so that their nonjoinder as defendants defeats the suit.

The motion is not meritorious. Without attempting to foretell the outcome, we find it sufficient to say that "novel issues" of such apparent difficulty ought not to be resolved in the broad and relatively abstract terms of the complaint considered by itself. We may be permitted to wonder why the concerned legal officers of the city should choose to leave the plaintiffs' allegations unex-

---

3. Defendants' Memorandum of Law at 16 and Reply Memorandum at 3.

4. Serna v. Portales Municipal Schools, 351 F.Supp. 1279 (D.N.Mex.1972); Mills v. Board of Education, 348 F.Supp. 866 (D. D.C.1972); Pennsylvania Association for

Retarded Children v. Commonwealth of Pennsylvania, 334 F.Supp. 1257 (E.D.Pa. 1971) (consent decree; 3-judge court).

5. Lau v. Nichols, Civ. No. C–70 627 (N.D. Cal., May 26, 1970), affd. 472 F.2d 909 (9th Civ. 1973).

plored and unanswered, cutting off at this threshold stage the possibility that such efforts could promote resolutions by means short of—but very possibly preferable to—the constitutional pronouncements of judges.[6] Having ventured that dictum, and intending it as a suggestion, the court's formal office remains to say that the complaint should not be, and will not be, dismissed on motion.

It is noted on both sides that the case implicates federal concerns and is touched by federal programs of funding and attendant supervision. Mentioning only one or two of these aspects, we recall that plaintiffs invoke 42 U.S.C. § 2000d and an HEW directive arguably requiring that school districts "must take affirmative steps to rectify the language deficiency" of students whose native tongue is not English and for whom such steps are necessary "in order to open [the districts'] instructional program to these students." While the court, as it is now advised, does not deem any federal officer or agency indispensable as a party, it seems probable that we would be aided by the views of HEW on the questions before us. The idea of seeking such assistance, perhaps in the form of amicus curiae presentations, will be explored in the near future.

Two further matters should be mentioned for our imminent agenda. Plaintiffs have moved for a declaration that the case may properly proceed as a class action. Defendants have asked that their time for answering extensive interrogatories be postponed. Both subjects are held now for discussion with counsel at an early date to be scheduled. In the meantime, counsel are invited to consider the possibility (which ought to be substantial in this case) of stipulat-

ing at least many of the facts plaintiffs invoke for their claims.

For now, then, the motion to dismiss is denied. Promptly after the expeditious filing of defendants' answer, the court and counsel will meet upon the subjects mentioned herein and such others as should be discussed to promote the prompt and orderly disposition of the action.

It is so ordered.

---

6. Cf. Guadalupe Organization v. Tempe Elementary School District No. 3, Civ. 71–435 PHX (D.Ariz.), where, by a stipulation dated January 24, 1972, the

parties adopted a program designed to deal with problems similar to those involved here.