Gloria MENDOZA, Maria Rivera Zayas, Luz Milagros Perez, Bernadina Gonzalez, Carmen Esponda, Lilia Orjuela, Ramon Nicanor Nunez, Genera Espinosa, individually on their own behalf, on behalf of their minor children, and on behalf of all other persons similarly situated, Plaintiffs,

v.

Barbara BLUM, individually and as Commissioner of the New York State Department of Social Services, and Blanch Bernstein, individually and as Commissioner of the New York Department of Social Services, and Richard Schweiker, individually and as Secretary of the United States Department of Health and Human Services, Defendants.

No. 74 Civ. 4994 (KTD).

United States District Court, S. D. New York.

Aug. 3, 1981.

The Legal Aid Society, Puerto Rican Legal Defense & Education Fund, Inc., Community Action for Legal Services, New York City, and Brooklyn Legal Services, Corp., Brooklyn, N. Y., for plaintiffs; Kalman Finkel, John P. Cunningham, Peter Bienstock, Robert L. Becker, Catherine P. Mitchell, Ira S. Bezoza, New York City, John C. Gray, Jr., Brooklyn, N. Y., of counsel.

Robert Abrams, Atty. Gen., New York City, for defendant Blum; Margaret A. Goederer, Asst. Atty. Gen., New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendant Brezenoff; Norma Kerlin, Asst. Corp. Counsel, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, Attorney for Defendant Schweiker; Gaines Gwathmey, III, Asst. U. S. Atty., New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This is an action in which plaintiffs, on behalf of all limited or non-English-speaking Hispanic persons ["LESA"], allege that New York City and New York State have failed to provide bilingual services in the administration of the City's public assistance programs, and as a result, plaintiffs have allegedly received unequal treatment in violation of the Constitution, Title VI of the Civil Rights Act of 1964 and the Social Security Act. In 1975, the City, State and Federal defendants moved to dismiss the complaint. The City and State contended that plaintiffs in alleging a failure to provide bilingual services did not state a claim under Title VI upon which relief could be granted. The federal defendant, the Secretary of the Department of Health and Human Services ["HHS"] (formerly Health, Education and Welfare), asserted that plaintiffs should be required to exhaust the available administrative remedies before seeking judicial remedies. These motions were denied on January 7, 1976, see Mendoza v. Lavine, 412 F.Supp. 1105 (S.D.N.Y. 1976). HHS was directed to proceed with the resolution of plaintiffs' administrative complaint. This court retained jurisdiction over the matter and permitted plaintiffs to conduct pre-trial discovery.

Subsequently, HHS found the City and State to be in violation of Title VI for having failed to provide bilingual services to LESA clients in federally funded public assistance programs. Negotiations ensued

between the City, State and Federal authorities in an effort to achieve a voluntary compliance with Title VI.

Several motions are currently pending before me. The City has moved for summary judgment on the grounds that federal court decisions since 1976 indicate that plaintiffs have in fact failed to state a Title VI claim. The City also asserts that a Title VI violation requires intentional discrimination, of which there is no allegation here, and furthermore, that discrimination on the basis of language is not within the purview of Title VI.

After this motion was made, the plaintiffs brought two motions to add two LESA welfare recipients, Ramon Robles and Melida Cruz, as plaintiffs under Fed.R.Civ.P. 21. Plaintiffs' attorneys apparently concede that without the addition of these plaintiffs there would be no available class representatives. Defendant City opposed these motions asserting that neither Cruz nor Robles was a member of the class. The City also moved to dismiss the complaint on the grounds that none of the named plaintiffs have been available for a deposition and that there no longer appears to exist any case or controversy.

Last October, the defendant Blum, Commissioner of the New York State Department of Social Services, also moved to dismiss this action for lack of subject matter jurisdiction in that no case or controversy exists. The defendant Blum argues that the new plaintiffs, Cruz and Robles, do not allege any wrongdoing by the State. Moreover, it is submitted that these proposed plaintiffs were supplied with adequate assistance in Spanish as to negate their alleged unequal treatment by the public welfare programs. Defendant Blum also points out that HHS has approved a plan by the City's Human Resources Administration to provide bilingual services to its clients of limited English-speaking ability.

Assuming, without deciding, that the failure to provide bilingual services to plaintiffs violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d and the fourteenth amendment to the Constitution where it results, albeit unintentionally, in unequal treatment for non-English-speaking Hispanics, the plaintiffs herein have not demonstrated such violations by the defendants. It is apparent that at least one of the proposed plaintiffs did not receive unequal treatment. In addition, a plan to service the needs of Spanish-speaking welfare recipients is being implemented by the City and State. Thus, there currently does not appear to exist any members of the aggrieved class. Accordingly, the complaint must be dismissed as not presenting any case or controversy.

I.

In 1976, a class was certified in this case to consist of

all persons who are eligible for or receiving benefits or services in federally funded public assistance programs who are most efficiently able to communicate in Spanish, their dominant language, who are deficient in any respect in the English language and who, as a result of such language deficiency, receive unequal treatment in their receipt of statutorily mandated public assistance benefits.

*Mendoza v. Lavine*, 72 F.R.D. 520, 522 (S.D.N.Y.1976). During the course of a status conference in December, 1979, plaintiffs' counsel informed me that the whereabouts of the originally named plaintiffs was unknown. Consequently, plaintiffs moved to add Melida Cruz and Ramon Robles. This motion is appropriately addressed first in order to ascertain whether a live controversy exists.

Proposed plaintiff Melida Cruz is a native of the Dominican Republic and the mother of two small children. She cannot read or write English but admits to having a limited understanding of spoken English. She is fluent in both written and spoken Spanish. As of February 14, 1980, the date of her affidavit, she had been a client for over a year of the Melrose Income Maintenance Center of the New York City Department of Social Services ["Melrose Center"] located in the Bronx. On most of the 30 occasions on which she visited the Melrose Cen-

ter, she relied on relatives who translated for her. She admits to having contact with Spanish-speaking staff members on a few occasions.

Her limited English-speaking ability allegedly hampered her efforts to recover a recoupment in a grant for her utility bills. The notice she received regarding her reduction was printed in English on one side and Spanish on the other. Only the English side was filled in with the amounts of the recoupment. Cruz signed a bilingual acknowledgement form on the side written in English. She claims that her grants continue to be reduced unjustifiably and that these reductions are causing her and her family great hardship. She states that she was "required" to sign a form in English which falsely stated that the reduction would not cause her undue hardship. "I was unaware of the consequences of signing these documents," she asserts, "as I did not understand them." Ms. Cruz believes that she "would have fewer difficulties at the Melrose Center if translators were freely available so that I could express my needs and understand the documents I am given." Cruz Affidavit, ¶ 16.

Proposed plaintiff Robles has submitted an affidavit which describes the alleged unequal treatment he received at the Prospect Income Maintenance Center in Brooklyn, New York because of the lack of Spanish-speaking staff there. Neither Robles nor his wife can read or write English and can only converse in Spanish. Robles states that he first applied for public assistance in the Aid to Families with Dependent Children ["AFDC"] category on July 20, 1979. At the Prospect Center, an application printed in English was presented to Robles who completed it with the help of his English-speaking brother-in-law. Robles and his brother-in-law returned to the Center four days later to supply additional information. It took over five weeks for them to receive any assistance. Robles explains that "this was over five weeks after we first applied and, had it not been for my brother-in-law's assistance, it undoubtedly would have taken longer since my wife and I were unable to understand any of the Center's oral or written instructions." Robles Affidavit, ¶ 7.

Then, in November, 1979, Robles was given a Notice of Discontinuance of Public Assistance which stated in English and Spanish that no assistance could be issued because his whereabouts was unknown. Evidently, Robles and his family never moved into an apartment which he leased because the landlord failed to make repairs necessary to render the apartment habitable. He instead moved to another apartment three blocks away. The Income Maintenance Center was unaware of this and discontinued Robles' assistance because they could not find him. According to Robles, this was done despite repeated efforts to tell employees at the Center that he had moved. "[T]he information [he] sought to convey to the Center was never understood because of the Center's failure to provide Spanish-language assistance." Robles Affidavit, ¶ 9. A hearing was later scheduled for Robles to appeal the discontinuance for January 11, 1980 (the date he signed his affidavit). In the meantime, with the help of a paralegal at the Legal Aid Society, Robles was able to file a new application for assistance at the Prospect Center using forms which were in English only.

Mr. Robles concludes that between July, 1979 and January, 1980, he made approximately 40 visits to the Prospect Center. On a few occasions he obtained assistance from an employee who spoke Spanish. Evidently, there were two translators available but Robles was only able to find one along with a Spanish-speaking security guard.

## 1. *Cruz' Motion*

█ The motion to add Melida Cruz as a plaintiff is hereby denied. She has not demonstrated herself to be a member of the class as certified. Although she might have experienced fewer difficulties than she claims had there been more Spanish-speaking employees at the Melrose Center, she has not shown that she has received unequal treatment as a result of her language deficiency. The notices of intent to reduce

her budget were written in English on one side and Spanish on the other. The English side, which was filled out by a Center employee, contained the notation at the bottom "Mira Atras." This should have alerted Ms. Cruz to examine the other side of the document. There is no claim here that she cannot read Spanish, and any failure by the Center's employees to specifically direct her to the Spanish version does not amount to unequal treatment. Moreover, Ms. Cruz admits to having an interview with a welfare worker who directed her to the Social Security office to obtain benefits for her son. Although this application was denied, it does not appear that her language deficiency was the cause of the denial. In fact, it is evidence from Ms. Cruz' affidavit that she has not had difficulty in making any applications whether in English or in Spanish. Her right to a hearing in order to stop the recoupments is clearly spelled out to her on the Spanish version of the notice of recoupment form, Cunningham Affidavit, February 15, 1980, Exh.A, and she has not claimed that her lack of understanding of English has impaired her exercise of this right to a hearing.

■ Even if Ms. Cruz' difficulties qualified her to be a member of the certified class, the claim that the Melrose Center should be enjoined from continuing to treat her and others similarly situated unfairly has been largely mooted. City and State officials have made significant strides in meeting plaintiffs' demands since Ms. Cruz experienced any difficulties. On August 1, 1979 when Ms. Cruz was notified of the City's intent to recoup, there were two bilingual CETA office aides assigned to the Melrose Center. Six additional bilingual employees (four non-CETA office aides and two case workers) are available as interpreters at the Center. Since December 10, 1979, there have been nine additional bilingual office associates employed at the Melrose Center. Calneck Affidavit, March 24, 1980, ¶¶ 5, 6.

1. Defendant City made this motion on February 6, 1980; defendant State made the same motion on October 29, 1980.

2. *Robles' Motion*

■ The motion to add Ramon Robles is granted. Mr. Robles has alleged unequal treatment at the Prospect Income Center because of the lack of Spanish-speaking employees at the Center and the use of forms in English only. His affidavit specifically describes the difficulties he incurred because of his language deficiency. For instance, the problems he had with notifying the Prospect Center of a change in address appear directly related to his inability to find an employee there who could understand him. Also, the application form completed by Mr. Robles was a form distributed by the New York State Department of Social Services and was in English only. *See* Bryant Affidavit, February 4, 1980, Exh. B.

■ The defendant City's argument that Mr. Robles is a recipient of state, not federal, funds and therefore is not a member of the defined class belies the clear notation on all of the city's records concerning Mr. Robles which show that he is a recipient of "ADC" funds, the federal Aid to Dependent Children Program. *See* Robles Affidavit, January 11, 1980, Exh. B, D; Becker Affidavit, February 15, 1980, Exh. A; Bryant Affidavit, February 4, 1980, Exh. A. In any case, Mr. Robles has standing to join the plaintiff class on behalf of his wife's children who are clearly eligible to receive federal funds under the Aid for Dependent Children Program.

II.

■ Having granted plaintiffs' motion to add Mr. Robles, I now turn to the separate motions of the defendants City and State to dismiss this action for lack of subject matter jurisdiction in that there exists no case or controversy.[1] The defendant City argues that additional Spanish-English bilingual office associates have recently been employed at the Prospect Income Maintenance Center. As of February 6, 1980, there were two CETA bilingual office aides function-

ing as translators, three bilingual workers in the Application Center, two bilingual workers in the Reception Area and one bilingual worker in the Mail-Phone Area. Also, as the defendant State argues, the only application form which Mr. Robles filled out which was not in Spanish (see Bryant Affidavit, February 4, 1980, Exh. B) is now available in Spanish. Moreover, the State now represents that most, if not all, of the forms which are used by applicants or recipients of public assistance, medical assistance, and food stamps are now available in Spanish. See Nestle Affidavit, January 5, 1981, Exh. A. "Thus, the application forms for [these] benefits are in Spanish, [the notices] of intent to reduce or terminate benefits are in Spanish and the scheduling notice of a fair hearing is written in Spanish." Id. ¶ 3. Furthermore, the State now supplies a translator for Hispanics at hearings to appeal administrative action.

The plaintiffs offer little in response to this evidence of defendants' efforts to meet the needs of Hispanic welfare recipients except to reassert their argument that Mr. Robles and Ms. Cruz were treated unequally because of their language deficiency. Unfortunately, this does not address the changes that were made subsequent to their alleged experiences.

Perhaps the most compelling development in the long history of this case is the approval by the Office of Civil Rights of the U.S. Department of Health and Human Services of the City's recently developed plan to provide bilingual services to its clients of limited English-speaking ability. As earlier stated, HHS found in 1977 that the City and State was in violation of Title VI for its failure to provide bilingual services. Negotiations between HHS, the City and the State followed in an effort to achieve a voluntary compliance. On June 3, 1980, the Office of Civil Rights wrote to the City's Commissioner of the Human Resources Administration to approve of the City's plan to meet the demands of the Mendoza complaint. The plan conducted a survey of the service needs of the non-English speaking Hispanic population and determined that 272 bilingual Income Mainte-

nance Specialists were required to meet those needs. Subsequently, 272 qualified individuals were either hired or promoted to fill those positions. The City also committed itself to making whatever changes are necessary to meet the changing needs of the LESA population.

This federal approval of the City's efforts to provide equality of distribution of welfare benefits came several months after Mr. Robles and Ms. Cruz experienced their alleged difficulties in obtaining benefits. Thus, it appears that whatever unequal treatment they did receive as a result of their language deficiencies the City's plan appears to prevent the possibility of it happening again. The improvements made at the Prospect and Melrose Centers that were earlier explained point out some specific changes.

The plaintiffs argue that the City's plan, as approved, falls far short of meeting the demands contained in the complaint. By letter to the federal Office of Civil Rights, the plaintiffs' attorney objected to the City's plan in that it (i) underestimated the number of bilingual staff needed to adequately service LESA's; (ii) provided for inadequate testing and training of new bilingual employees; and (iii) did not provide a clear definition of the functions and responsibilities of these new employees. The latter two objections to the City's plan need not be addressed by this court at this time. These objections address problems with the plan which may not ever result in a discriminatory impact upon Hispanic welfare recipients. A determination of the necessary level of linguistic competency required to avoid discrimination has not been proffered by the plaintiffs. From the experiences of Mr. Robles and Ms. Cruz, it does not appear that they would require more than the assistance of someone with basic Spanish verbal skills in order to avoid the sort of difficulties which they alleged. It appears that only through experience will the City and State be able to determine the exact level of competency necessary to meet the needs of their clients.

As to the first objection, plaintiffs assert that a Title VI violation will continue to exist until enough bilingual workers are hired so that the proportion of bilingual workers to Hispanic clients is the same as the proportion of English-speaking workers to English-speaking clients. Title VI, however, does not require such a remedy. Although the law is less than clear on what is required to make a *prima facie* showing of discrimination under Title VI,[2] at a minimum some sort of discriminatory impact is required. It is very possible that any discriminatory impact could be eradicated completely by the 272 bilingual employees hired by the City even though the proportion of bilingual employees to Hispanic recipients may be less than the proportion of English-speaking employees to English-speaking recipients.

In their complaint submitted almost seven years ago, the plaintiffs requested that the defendants submit to this court and to plaintiffs' counsel an affirmative action plan for eliminating language barriers, "such plan to include:

(i) The hiring of bi-lingual personnel in numbers proportionate to the number of Puerto Rican and other Hispanic applicants and recipients; (ii) a time schedule for hiring such bilingual staff; (iii) methods to be used to recruit and select such personnel; (iv) details of training programs for such personnel; and (c) ordering defendants to redeploy personnel and assign cases so as to reflect the language needs of plaintiffs and members of the class and the language abilities of defendants' employees; and (d) ordering defendants to print and provide bi-lingual documents, forms and all other written materials provided to recipient and applicants by defendants."

Even assuming a Title VI violation existed because of what happened to Ms. Cruz and Mr. Robles, it is apparent for the foregoing reasons that the City has, at least for the present, met the demands set forth in the complaint. Accordingly, the defendants City and State's motion to dismiss the complaint for lack of subject matter jurisdiction in that no case or controversy exists is granted.

The complaint against the federal defendant must also be dismissed. The federal defendant was charged with failure to enforce Title VI at the state and local level. Since it appears that the State and City are in compliance, there does not presently exist a cognizable claim against the federal government.

In sum, the complaint is dismissed as to all defendants.[3]

SO ORDERED.

---

**2.** *Compare Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Castaneda v. Pickard*, 648 F.2d 989 (5th Cir. 1981); *Lora v. Board of Educ.*, 623 F.2d 248 (2d Cir. 1980); *Bryan v. Koch*, 492 F.Supp. 212 (S.D.N.Y.), *aff'd*, 627 F.2d 612 (2d Cir. 1980) *with Board of Education v. Harris*, 444 U.S. 130, 100 S.Ct. 363, 62 L.Ed.2d 275 (1979); *Lau*

*v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974); *NAACP v. Medical Center, Inc.*, 657 F.2d 1322 (3d Cir. 1981) (en banc). *See also* Note, Title VI: The Impact/Intent Debate Enters The Municipal Services Arena, 55 St. Johns L.Rev. 124 (1980).

**3.** In light of the dismissal of this complaint there is no need to address the City's motion for summary judgment.