**Judy SERNA et al., Plaintiffs,**

v.

**PORTALES MUNICIPAL SCHOOLS et al., Defendants.**

**Civ. No. 8994.**

United States District Court,
D. New Mexico.

Nov. 14, 1972.

Mario Obledo, Alfred H. Sigman, Mexican American Legal Defense and Educational Fund, San Francisco, Cal., David W. Bonem, Clovis, N. M., for plaintiffs.

Charles A. Pharris, Keleher & McLeod, Albuquerque, N. M., for defendants.

## MEMORANDUM OPINION

MECHEM, District Judge.

Plaintiffs are minors of Spanish-surnamed heritage represented by their parents in this suit which they have brought as a class action. They seek declaratory and injunctive relief, invoking jurisdiction here under 28 U.S.C. Sections 1343, 2201 and 2203. Plaintiffs assert that defendants have discriminated against them and the members of the class they claim to represent in failing to provide learning opportunities which satisfy both their educational and social needs. They claim deprivation of due process and equal protection guaranteed by the Fourteenth Amendment of the United States Constitution and of their statutory rights under Title VI of the Civil Rights Act of 1964, specifically Section 601 (42 U.S.C. § 2000d).

The City of Portales is divided by railroad tracks. The Spanish-surnamed population is concentrated on the North side of these tracks. One of the City's four elementary schools, Lindsey School, is located in that area. For the 1971–1972 school year Lindsey School had a student enrollment of 86.7% Spanish-surnamed students. The ethnic composition of the three elementary schools South of the tracks, Brown, James and Steiner, during the same year was predominately Anglo, with 78% to 88% Anglo enrollment. Spanish-surnamed children comprise 34.-5% of the student population of the four elementary schools in the Portales school district. There is one junior high school and one senior high school in the district. The junior high school enrollment is 70.2% Anglo and 28.8% Spanish-surnamed. In the senior high school, 82% of the students are Anglo and slightly over 17% are Spanish-surnamed.

The focal point of this action pivots around the education offered in the Lindsey School where the Spanish-surnamed children comprise a large majority. While plaintiffs assert that educational discrimination exists throughout the Portales school system, it is alleged to be most evident at Lindsey. Plaintiffs claim discrimination is the result of an educational program within the Portales school system which is tailored to educate the middle class child from an English speaking family without regard for the educational needs of the child from an environment where Spanish is the predominant language spoken. Such a program, it is claimed, is a denial of equal educational opportunity to the Spanish-surnamed children.

Plaintiffs do not claim that the program in the Lindsey School is inferior to that offered in any other school within the district. In fact plaintiffs contend that the educational program at Lindsey is substantially the equivalent of that offered at the Brown, James and Steiner schools. It is the similarity of these programs which is the crux of plaintiffs' claim of inequality of educational opportunity.

Although the programs offered at Lindsey are similar in many regards with programs offered at Brown, James and Steiner, plaintiffs are not correct in their assertion that the education offered at Lindsey is the same as that offered in the other schools. In the current school year, six Spanish-American teachers are employed at Lindsey. The school is continuing a bilingual-bicultural program for first graders which was instituted in the 1971–1972 school year and also provides a limited program in English as a second language which reaches approximately 40 students in the second through sixth grades. Neither of these programs or any other bilingual-bicultural program is offered in the other Portales elementary schools nor are any Spanish-surnamed teachers employed in those three schools.

Defendant school district asserts that the programs which have been established at Lindsey and the increase in the number of teachers with a Spanish surname indicate its awareness of the needs of the Spanish-surnamed children and constitutes sufficient affirmative action to remedy whatever deficiencies may have existed. The evidence presented, however, indicates that the achievement of children at Lindsey is consistently lower than that of the children attending the other three elementary schools. I. Q. tests administered to fifth grade students in the four Portales municipal elementary schools reveal that the children at Lindsey scored approximately 13% lower than children at James and approximately 8% lower than children at Steiner. In language expression, Lindsey students were two and one-half years behind James students and 1.3 years behind the national norm.

In I. Q. tests administered to all first graders in the Portales Municipal Schools in October, 1971, Lindsey students scored lowest with 86.7%, which was also below the national norm. While it is recognized that this test was given only one month after Lindsey's bilingual-bicultural program for first graders was inaugurated, the results are indicative of the

learning disability with which the Spanish-speaking child comes to school. Testimony by an educational psychologist established that in his opinion language difficulties accounted for 80% to 85% of the differences indicated in achievement testing. He stated that the reading ability of the average child at Lindsey was 1.7 years behind the national norm.

Evidence relating to I. Q. test scores of children in the Portales school system was admitted at the trial with the recognition that such scores are not conclusive indicia of student achievement or failure. What becomes apparent from an examination of these scores, however, is that the performance of the children at every level at Lindsey School is not what it should be when compared with the performance of students at the other schools. Coupled with the testimony of educational experts regarding the negative impact upon Spanish-surnamed children when they are placed in a school atmosphere which does not adequately reflect the educational needs of this minority, as is found to be the situation in the Portales schools, the conclusion becomes inevitable that these Spanish-surnamed children do not in fact have equal educational opportunity and that a violation of their constitutional right to equal protection exists.

The administrators of the Portales school district are aware of these conditions, have taken some steps to alleviate the problem, and have made positive improvements. These corrections, however, are not adequate. Under these circumstances, it is incumbent upon the school district to reassess and enlarge its program directed to the specialized needs of its Spanish-surnamed students at Lindsey and also to establish and operate in adequate manner programs at the other elementary schools where no bilingual-bicultural program now exists. The fact that the other three elementary schools have a smaller Spanish-surnamed enrollment than Lindsey does not eliminate the requirement for such programs.

Of particular importance is the recruitment and hiring of more qualified Spanish-speaking teachers and teacher aides at each of the district schools as positions and personnel become available. The presence of qualified teachers who can speak Spanish should be a significant factor toward enabling the Spanish-surnamed students to effectively participate in the educational process.

Defendant argues that the special educational needs of Spanish-surnamed children is not the result of state action and that defendant did not create these problems through any classification or racially motivated discrimination. It cites Keyes v. School District No. 1, Denver, Colorado, 445 F.2d 990 (10th Cir. 1971), cert. granted, 404 U.S. 1036, 92 S.Ct. 707, 30 L.Ed.2d 728 (1972), in support of this contention. The case is distinguishable. The racial imbalance existent in the Denver school district resulted from residential patterns and "racially neutral" assignment criteria. The plaintiffs in *Keyes* alleged they were not given an equal educational opportunity due to the segregation which existed at the school. The Court of Appeals held:

. . . we cannot conclude from that one factor—as indeed neither could the trial court—that inferior schooling is being offered.

The Court was cognizant of the low scholastic achievement prevalent in the "core area" school but emphasized the problem was not due to the single factor of segregation.

. . . even a completely integrated setting does not resolve these problems if the schooling is not directed to the specialized needs of children coming from low socio-economic and minority racial and ethnic backgrounds. Thus is it not the proffered [sic] objective indicia of inferiority which causes the substandard academic performance of these children, but a curriculum which is allegedly not tailored to their educational and social needs. *Keyes*, at 1004.

This opinion would indicate that, while the Court was unwilling to hold that segregation of itself would be a denial of

equal educational opportunity, it would be a deprivation of equal protection for a school district to effectuate a curriculum which is not tailored to the educational needs of minority students. It is just such a deprivation which is alleged in the instant case. The promulgation and institution of a program by the Portales school district which ignores the needs of such students does constitute state action.

Defendant school district also contends that it is seriously restricted by its operating budget in expanding its bilingual-bicultural programs. Evidence at the trial established that there are sources of funds available to implement and maintain such programs. Federal funds are available for bilingual-bicultural programs in the elementary and secondary schools under Titles I and VII of the Elementary and Secondary Education Act of 1965 (Title I, 20 U.S.C. § 241a et seq.; Title VII, 20 U.S.C. § 880b et seq.). The State of New Mexico's Bilingual Instruction Act, 11 N.M.S.A. § 77–21–1 et seq., similarly has made funding available for the "special education needs" of students with a limited English-speaking ability caused by living in an environment where the dominant language is not English. These are some of the available sources of funding for a bilingual-bicultural program. Defendant school district is directed to investigate and utilize wherever possible the sources of available funds to provide equality of educational opportunity for its Spanish-surnamed students.

It is also claimed that an obstacle to expanding bilingual-bicultural programs in the Portales school system is the absence of qualified teachers. Defendant school district has made an effort to recruit and has recruited Spanish-speaking teachers. It points to the fact that it has received few applications from such teachers and that the teacher turnover in the Portales Municipal Schools is relatively low. However great the effort, this is not an acceptable justification for not providing specialized programs where the deprivation of them violates a constitutional right and where funding is available. It is incumbent upon the school district to increase its recruiting efforts and, if those recruiting efforts are unsuccessful, to obtain sufficient certification of Spanish-speaking teachers to allow them to teach in the district.

■ Plaintiffs have met the qualifications of Rule 23 of the Federal Rules of Civil Procedure and may represent the class of Spanish-surnamed children attending the Portales Municipal Schools. Defendant's challenge to the standing of the plaintiffs to bring this action is without merit. The record indicates that at the time of the bringing of this suit the plaintiffs were either students in the Portales school district or had been excluded therefrom.

■ Plaintiffs did not meet their burden of proof in establishing discrimination by the Portales school district in its employment practices regarding non-teaching personnel. The evidence did prove, however, that the defendant school district is not providing an educational program which affords equality of educational opportunity for all of its students.

Jurisdiction over this action will be retained for ninety (90) days from the date of entry of this memorandum opinion so as to enable the Portales school district to submit to the court its plans for remedial action to be undertaken by the defendant in compliance with the requirements set forth in this opinion.