Kevin ARMSTRONG, et al., Plaintiffs,

v.

Donald J. O'CONNELL, et al., Defendants,

Milwaukee Teachers' Education Association, Undesignated Intervenor.

Civ. A. No. 65–C–173.

United States District Court, E. D. Wisconsin.

April 13, 1977.

---

See also, D.C., 427 F.Supp. 1377.

Lloyd A. Barbee, Milwaukee, Wis., for named plaintiffs.

Irvin B. Charne, Milwaukee, Wis., for the absent members of the plaintiff classes.

L. C. Hammond, Jr., Ross R. Kinney and Patrick W. Schmidt, Milwaukee, Wis., for defendants.

Curry First, Milwaukee, Wis., for Milwaukee Teachers' Ed. Assn., undesignated intervenor.

Ness Flores, Waukesha, Wis., Oscar Garcia-Rivera, Barbara L. Schulman, Puerto Rican Legal Defense & Ed. Fund., Inc., New York City, Teitelbaum & Hiller, Richard J. Hiller, Herbert Teitelbaum, New York City, David Loeffler, Milwaukee, Wis., Vilma S. Martinez, Peter D. Roos, Virginia Martinez, Mexican-American Legal Defense & Ed. Fund, Inc., San Francisco, Cal., for proposed intervenors.

## DECISION AND ORDER ON MOTION TO INTERVENE

REYNOLDS, Chief Judge.

In this school desegregation case which has recently entered its final remedial phase, the City-Wide Bilingual Bicultural Parent Advisory Committee and certain Hispanic students seek to intervene as representatives of a plaintiff class comprised of Hispanic students enrolled in bilingual programs in the Milwaukee public school system.[1] Counsel for the Hispanic petitioners inform the court that Hispanic students comprise approximately 5 per cent of the student enrollment in the Milwaukee school system. The petitioners have moved to intervene as of right pursuant to Rule 24(a), F.R.Civ.P., or, alternatively, to intervene permissibly pursuant to Rule 24(b), or to intervene pursuant to Rule 23(d). The Court has had the benefit of extensive briefs and oral argument on the motion, and for the reasons stated hereafter, the motion to intervene will be denied.

1. The proposed intervenors are:
CITY–WIDE BILINGUAL BICULTURAL PARENT ADVISORY COMMITTEE, an uncorporated association of Hispanic parents, students and teachers of Hispanic origins, and HECTOR GARCIA and CECILIA GARCIA, individually and on behalf of Carmen Iris Garcia and Marilyn Garcia, minors;
AMPARO JIMENEZ, individually and on behalf of Maria Guadalupe Jimenez, Margarita Jimenez, Elias Jimenez, Emiliano Jimenez and Ampara Jimenez, minors;

EUSTASIA GARZA, individually and on behalf of Melba Garza, Jesus Garza and Jose Manuel Garza;
IGNACIO FIGUEROA, individually and on behalf of Jose Figueroa, Minerva Figueroa, and David Figueroa, minors;
AURORA WEIER, individually and on behalf of David Weier, minor;
MERCEDES RIVAS, individually and on behalf of Maria Rivas, minor;
HORTENSIA BOLIVAR, individually and on behalf of Ana Mercedes Bolivar, minor.

A brief recital of the chronology of the remedial phase of this litigation will place the petitioners' motion in context. By decision and order dated January 19, 1976, this Court determined that the defendants had intentionally maintained a segregated school system, and on that date the defendants were ordered, *inter alia,* to begin the formulation of remedial plans. *Amos v. Board of City of Milwaukee,* 408 F.Supp. 765 (E.D.Wis.1976). As a preliminary matter, the Court certified two plaintiff classes: one consisting of all black pupils presently enrolled and those black pupils who will in the future become enrolled in the Milwaukee public school system, and the other consisting of all nonblack pupils presently enrolled and those nonblack pupils who will in the future become enrolled in the Milwaukee public school system. 408 F.Supp. at 775. Thus, under the terms of the January 19, 1976, decision and order, the Hispanic pupils are members of the nonblack class.

2. MAJOR ISSUES, ASSURANCES, AND LEGAL PRINCIPLES AFFECTING THE HISPANIC PUPIL DURING DESEGREGATION EFFORTS

The need and importance of bilingual bicultural education in a systematic and continuous developmental program in the Milwaukee Public Schools for children of limited English ability and for maximizing other children's language potential and cultural understanding and appreciation has been recognized and endorsed by official action of the Board of School Directors. Pertinent federal legislation and the Bilingual Bicultural Legislation Act (Chapter 395, Wisconsin Laws, 1975) support and require bilingual bicultural education as a viable approach for providing equal educational opportunities for limited English ability students. There are also judicial and legal precedents that have found violations of the Civil Rights Act, Title VI, when bilingual bicultural programs are non-existent or non-available to pupils in need of them (*Serna v. Portales,* D.C. N.M., 351 F.Supp. 1279 affd., 10 Cir., 499 F.2d 1147; *Lau v. Nichols,* 9 Cir., 483 F.2d 791, rev. 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1). Bilingual bicultural education and integration are compatible and feasible. Both efforts. are attempts at providing equality of educational opportunity for pupils. Bilingual bicultural education programs are to enhance integration efforts as opposed to having a segregative effect. Social and cultural interaction are further assets to language and cultural maintenance.

In May of 1976, the Special Master held hearings on the various proposed plans. By order dated June 11, 1976, the Court established desegregation guidelines, and on July 9, 1976, the Court ordered that the first stage of desegregation, or Phase I, commence for the 1976–77 school year pursuant to the guidelines established by the Court and a plan prepared by the defendants. Phase I has been successfully completed.

Early in the fall of 1976, the defendants, the school administration, and various community representatives began preparation of desegregation plans for the remaining two years of the desegregation effort. By letter dated October 22, 1976, the defendants' attorney advised the court of the defendants' adoption on October 5, 1976, of a statement entitled "Major Issues, Assurances, and Legal Principles Affecting the Hispanic Pupil During Desegregation Efforts."[2] The defendants submitted two

The Milwaukee Public Schools' bilingual bicultural program is at present in the Spanish-English area. It mainly serves pupils of Hispanic descent enrolled in the Milwaukee Public Schools but is available to any child.

In order to assure continuity of bilingual bicultural education programming and equal educational opportunities for Hispanic pupils and for other ethnic/language groups as might appear necessary during desegregation efforts, the Board of School Directors needs to endorse and commit itself to the following:

1. Hispanic pupils need to be considered an ethnic/racial/minority group and an identifiable class, forming part of the "minority group pupil" population of the Milwaukee Public School System.
2. The combined numbers of "minority group pupils" shall be kept within the ratios set by the court order.
3. Schools with Hispanic pupil enrollment constituting most or all of the minority pupil population shall be considered desegregated if the percentages of minority pupils fall within those set by the court.
4. Criteria shall be set, in accordance with Chapter 395, to determine bilingual bicultural needs and eligibility to bilingual bicultural programs of Hispanic pupils volunteering for specialty programs. Parents of pupils eligible for bilingual bicultural education programming shall so be advised prior to the honoring of any transfer request to a non-bilingual specialty program.
5. The transportation of Hispanic pupils to other schools, different from those they are in attendance at, shall take place in accord-

plans to the Court in early January of 1977. On February 2, 1977, the petitioners herein filed their motion to intervene. On February 3–5, 1977, the Special Master conducted hearings on the various proposed remedial plans for the school years 1977–78 and 1978–79. On February 17, 1977, the Special Master submitted his recommendations to the Court, and the parties then commented on the Special Master's recommendations. On March 11, 1977, a hearing was held before the Court, and on March 17, 1977, the Court issued its final remedial order. Pertinent to the instant motion, paragraph 3(j) of that order states:

"Nothing in this order is intended to prevent defendants from designating Hispanic students, native Americans, and other minority students as separate minority populations and according them priority over other non-black students in assignment to schools with programs designed to meet their special needs. * *"

At this juncture it is appropriate to note what petitioners herein seek and what they do not seek. The petitioners state that they seek an intervention limited to the protection of their bilingual-bicultural education programs during the remaining two years of the remedial phase, programs to which they claim entitlement under federal and state law. See 20 U.S.C. § 1703(f) and Chapter 395, Wisconsin Laws of 1975. Recognizing that the Court issued its final remedial order in this matter on March 17, 1977, the petitioners, if granted intervenor status, would seek to have the language of paragraph 3(j), supra, amended so that the paragraph is mandatory rather than permissive. The petitioners do not claim that a dual system has been operated with respect to Hispanic students, nor do they seek to have schools which may be identifiable as Hispanic schools eliminated. On the contrary, petitioners request that the existing groupings and concentrations of Hispanic students in various schools offering bilingual-bicultural programs not be disturbed.

Rule 24, F.R.Civ.P., requires that a motion for intervention, whether of right or by permission, be timely filed. Clearly, it would be untimely, that is, too late in the proceedings, for the petitioners to intervene for purposes of a claim that the defendants have maintained a dual system as to Hispanic students. However, the petitioners have interposed a motion to intervene for the purpose of protecting their constitutional and statutory interests in bilingual-bicultural programs as they may be affected by the remedial course of this litigation. The critical inquiry here is whether or not on the facts of this case the petition is premature. For the reasons detailed below, the Court is persuaded that the petition is premature and accordingly must be denied.

Without determining the scope of petitioners' entitlement to bilingual programs, the Court notes its concurrence with Judge Wisdom's observation that "[n]o remedy for the dual system can be acceptable if it operates to deprive members of a third ethnic group of the benefits of equal educational opportunity." *United States v. Texas Education Agency,* 467 F.2d 848, 869 (5th Cir. 1972). However, on the facts of this record, there is no present demonstration of impingement upon the petitioners' interests

ance with the Pupil Transfer Policy and the Board adopted Transportation Policy.

6. Hispanic pupils' right to bilingual bicultural education programming will always be observed in line with the principles of equality of educational opportunity and guided by the rules set forth by the Bilingual Bicultural Education Act, Chapter 395, Laws of Wisconsin, 1975. This also shall apply to other ethnic/language groups participating in bilingual bicultural education programs.

7. The special status of teachers in bilingual bicultural education programs with regard to seniority is recognized. Teachers needed in bilingual bicultural education programs will be assigned and/or retained in schools in response to bilingual bicultural education needs.

The categorization and implications of the movement/transfer of Hispanic and bilingual teachers as per the court order shall be discussed, negotiated and resolved with bargaining units and the final agreements will become part of this statement of assurances.

8. The Board shall adopt the above as part of the planning for phase two and three of the desegregation/integration plan.

in bilingual-bicultural programs, nor is there an indication that any harm will devolve on petitioners as a result of remedial actions to be taken. As was mentioned previously, paragraph 3(j) of the Court's final remedial order of March 17, 1977, provides that the order does not prevent the defendants from according Hispanic students priority over other nonblack students in assignment to schools with bilingual-bicultural programs. Moreover, the guidelines described in paragraph 3(c) of that order are a liberalization of the Court's prior guidelines in an effort to provide the defendants and the school administration with the flexibility needed to deal fairly with such concerns as bilingual-bicultural programs. The defendants have expressed a commitment to continuation of the bilingual-bicultural programs, and the defendants recognize their statutory obligation to provide such programs. See in particular paragraphs 4 and 6 of the document entitled "Major Issues, Assurances and Legal Principles Affecting the Hispanic Pupil During Desegregation Efforts" contained in footnote 2. The Court has no basis at this time on which to question the defendants' expressed intentions in this area.

Turning then to an examination of the various rules under which petitioners seek to intervene in this action, the Court must conclude that intervention of right pursuant to Rule 24(a), F.R.Civ.P., would be inappropriate. Although petitioners claim an interest relating to the subject of the action herein, the petitioners are not presently situated so that as a practical matter their interests are or will be impeded by the remedial steps taken in the instant matter. Should the situation alter in the future, the petitioners may renew their petition to intervene.

With regard to permissive intervention pursuant to Rule 24(b), F.R.Civ.P., the inquiry thereunder is whether or not petitioners' claim or defense and the main action have a question of law or fact in common, and whether or not intervention will unduly delay or prejudice the adjudication of the rights of the original parties. The rule is not phrased in such a way as to afford easy application to the remedial stage, as opposed to the liability stage, of a school desegregation case. Nor is it useful to divorce petitioners' proposed intervention from the context of this action as a class action. The petitioners are presently members of the class of nonblack pupils in the main action. Rule 23(d), F.R.Civ.P., pertaining to orders permitted in class actions states that the court may permit intervention for the protection of the members of the class or otherwise for the fair conduct of the action. While the Court will not close its doors to persons whose interests are harmed or threatened with harm by the progression of this suit through its final remedial phase, in fairness to the present litigants and in the interests of the manageability of this lawsuit, it is incumbent upon the Court to consider carefully an application for intervention. The Court concludes that at this time neither the protection of the members of the class nor the fair conduct of the action warrants the granting of petitioners' motion.

In sum, the Court is not unmindful of the interests of the petitioners in bilingual-bicultural programs. But as the petitioners have demonstrated no present or likely future impairment of their interests, the motion to intervene will be denied with the understanding that the petitioners may renew their motion at such time as it appears that their interests are impaired or likely to be impaired by the remedial course of this school desegregation case.

IT IS THEREFORE ORDERED that the motion of the City-Wide Bilingual Bicultural Parent Advisory Committee, et al., will be and it hereby is denied.