The **ROCKVILLE REMINDER, INC.**, et al.

v.

The **UNITED STATES POSTAL SERVICE** et al.

Civ. No. 15112.

United States District Court, D. Connecticut.

Oct. 20, 1972.

F. Owen Eagan, William P. Murray, West Hartford, Conn., Herbert Hannabury, Rockville, Conn., for plaintiffs.

Stewart H. Jones, U. S. Atty., Henry S. Cohn, Asst. U. S. Atty., Hartford, Conn., for defendants.

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

CLARIE, District Judge.

The plaintiffs brought this action against the United States Postal Service and two local Postmasters individually and as agents of said Service, seeking monetary damages as well as a declaratory judgment; however, the prayer for relief in monetary damages has now been amended and stricken. The plaintiff corporation, The Rockville Reminder, Inc., requests a judgment authorizing it to install metal hook devices on the sides of rural mailboxes, with the consent of the box owners, in such a manner as to permit the private delivery of its advertising circular "The Rockville Reminder," by hanging it in plastic bags on said hooks. The two rural mailbox owners have joined in the action as plaintiffs in behalf of themselves and others similarly situated and assert a right to receive at their rural box said advertising circular through non-postal delivery service. The plaintiffs and the defendants have filed cross-motions for summary judgment and both represent that no factual issues remain to be litigated.

Article 1, § 8 of the United States Constitution gives Congress the authority to establish a postal system. Congress also has the power to establish reasonable regulations governing the transaction of postal business, "defining what shall be carried and what not, and the prices of carriage, and also prescribing penalties for all offenses against it." In re Debs, 158 U.S. 564, 580, 15 S.Ct. 900, 905, 39 L.Ed. 1092 (1895); 39 U.S. C. §§ 401(2), 402. There are, therefore, two issues: (1) whether Congress has exercised its regulatory powers, and (2) if Congress has exercised its regulatory power, whether that exercise is sustainable.

In essence, the plaintiffs argue that Congress has not, in fact, exercised its regulatory power. Accordingly, they submit that the focus of the existing regulatory scheme is upon what may be deposited *within* an authorized mailbox, rather than upon what may be placed *on* one. In this connection, the plaintiffs urge that the drafters of the applicable regulations were aware of the precise meanings of the words "in" and "on," and that the failure of the regulations to expressly employ the word "on" must therefore be taken as a manifestation of intent not to proscribe the activity here in question.

Compelling though the argument may be at first impression, an examination of the relevant postal regulations reveals that it is unsupported. The following sections of 39 C.F.R. are controlling: § 151.1(a) and (b), § 156.5(h), § 156(c) (2). 39 C.F.R. § 151.1(a) provides:

> "Every letterbox or other receptacle intended or used for the receipt or delivery of mail or any city delivery route, rural delivery route, star route, or other mail route is designated an authorized depository for mail."

39 C.F.R. § 151.1(b) states that the receptacles described in § 151.1(a),

> shall be *used exclusively for mail* except as provided in section 156.5(h). (emphasis added)

■ Taken *together* and applied to the facts at hand, these two sections indicate that, except as provided in 39 C. F.R. § 156.5(h), the letterboxes of the individual plaintiffs are "authorized depositor(ies)" which must be used "exclusively for mail." Viewed in conjunction with C.F.R. § 156.5(h) which provides that

> ". . . publishers of newspapers *regularly mailed* as 2d class mail may, on Sundays and national Holidays only, place copies of . . . issues in the rural and star route boxes of subscribers." (emphasis added)

it becomes apparent that § 151.1(a) and (b) are concerned with the *use* to which such depositories may be put, and not merely with that which may be placed within such receptacles. The force of this conclusion is not diminished by § 156(c)(2), which may well be viewed as an exception to these sections, in that it simply provides that

"A receptacle for newspapers, not restricted to any one paper, may be placed *above* or *below* the box or on the post or support, provided it will not interfere with the delivery of the mail, obstruct the view of the flag, or present a hazard to the carrier . . . ." (emphasis added)

Indeed, an application of the maxim *expressio unius est exclusio alterius* (expression of one thing is the exclusion of another) actually strengthens it, for the regulations' enumeration of the places where such a receptacle may be placed (i. e. "above" or "below" the mailbox) implicitly proscribes the placing of such a device upon the box itself.

Having concluded that §§ 151.1(a) and (b), 156.5(h), and 156(c)(2) evidence a design to regulate the uses to which mail receptacles may be put, this Court also concludes that said sections do in fact proscribe the activity here in question.

The final issue which merits brief consideration is whether or not the regulation is sustainable. Although the hearing on the motion for a preliminary injunction produced testimony indicating that the devices themselves did not, when affixed to rural mailboxes, interfere with the opening or closing of the receptacles' doors (Tr. 19); encroach upon the interiors of the boxes (Tr. 62); affect the raising or lowering of the flags (Tr. 19, 62); or endanger mail carriers (Tr. 62), evidence was presented to indicate that such devices may pose a potential security risk to the contents of such boxes (Tr. 63). One way such a risk could arise is by material being left suspended from such a device during a homeowner's absence, thereby

calling that absence to the attention of would-be thieves and vandals. Although a vacationing homeowner may notify Postal authorities to cease mail deliveries during a period of anticipated absence (Tr. 74) and although a similar procedure exists whereby a homeowner may request that delivery of the Rockville Reminder be suspended (Tr. 90), a homeowner could easily neglect or forget to follow either procedure. Since a homeowner who forgets or neglects to have postal deliveries suspended during a period of absence is also likely to neglect or forget to have delivery of the Rockville Reminder suspended, the mere existence of a procedure by which delivery of the Reminder may be suspended does not diminish that risk. Although a similar risk would appear to be posed by the existence of newspaper receptacles which may be affixed in close proximity to mailboxes (Tr. 64), the risk in such cases is substantially diminished.

Completely apart from the economic aspects, which indicate that non-postal delivery is significantly cheaper (Tr. 33) and the defendant's contention that approval of such practices could "bankrupt" the Postal Service and thereby impair the efficiency of the mails, the threat to postal security posed by widespread use of such devices in itself justifies the conclusion that such regulations reasonably foster the efficient delivery of the mails.

However, besides endangering postal security and encouraging unlawful tampering with the United States Mail, the seemingly innocuous practice of permitting the attachment of advertising matter other than official mail to the exterior of the receptacle could impair the prompt and efficient delivery of official mail in still another way. Authorization of such a practice would likely cause advertising deliverymen to use mailbox flags to signal to boxowners that a delivery has been made. This would impede the efficient pickup and delivery of the mails by misleading postmen into believing receptacles contain official mail awaiting pickup, and by causing

postmen to stop and examine such mailboxes even though they possess no mail requiring pickup or delivery.

 Broad rule-making authority must be allowed a federal agency such as the postal service whose activities are national in scope and are geared to meet varied conditions and circumstances throughout the country. These rules, which are here tested in the context of single mail receptacles, must also control the use of multiple tiers of rural mailboxes designed to service multiple condominium and apartment housing complexes in other rural areas. Although the plaintiff describes the hook devices as "innocuous" when installed on single mailboxes, it is extremely likely that such devices could create serious impediments to the delivery of mail to such multiple unit dwellings. In such circumstances advertising material which is hung from one mailbox could well drape down upon the exteriors of receptacles located below and to the sides. Moreover, if the existing rules were to be modified, not only would this plaintiff be permitted to make deliveries in plastic containers, but all other catalogue, magazine, advertising, and parcel distributors would also be accommodated within the orbit of the rule. Even metropolitan apartment mail receptacles would enjoy no immunity in the face of an attack alleging discrimination and a denial of equal protection under the law.

It is not doubted that the rural mailboxes in question are owned by the individual plaintiffs herein (Tr. 76). Nor is it disputed that, once installed, such hooks similarly become the property of the boxowners (Tr. 41). Rather, it is submitted that economic and property rights under the fifth amendment, like rights under the first and ninth amendments, are subject to reasonable circumscription, B. & M. Ltd. v. Smith, 351 F.Supp. 1057, C.N. No. C72–644 (N.D.Ohio 1972); Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L. Ed. 1262 (1942); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d

491 (1970), and that the circumscription herein is reasonable.

The Court's earlier ruling on the plaintiffs' motion for a preliminary injunction and the findings of fact and conclusions of law contained therein are hereby incorporated herein and together with this Ruling, shall constitute the findings of fact and conclusions of law pursuant to Rule 52(b), Fed.R.Civ.P.

Accordingly, it is

Ordered that the plaintiffs' motion for summary judgment be, and hereby is denied; and that the defendant's cross-motion for summary judgment be, and hereby is granted.