Vernal G. CAVE, M.D., F.A.C.P., individually and as Chairman of the Black Community Council of Crown Heights, Ruth G. Goring, Lionel L. Daniels, Father Edmund P. O'Brien, Rev. Dr. Benjamin J. Lowery, and Ethlene D. Dubin, Plaintiffs,

v.

Abraham D. BEAME, as Mayor of the City of New York, and as a Member of the Board of Estimate of the City of New York, et al., Defendants.

No. 77–C–2.

United States District Court,
E. D. New York.

June 1, 1977.

Walker & Bailey, New York City, for plaintiffs.

W. Bernard Richland, Corp. Counsel, New York City, for City defendants; Mary Ann DeCarolis, Michael Cecere, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for State defendants; Arnold Fleisher, New York City, of counsel.

David G. Trager, U.S. Atty., E. D. N. Y., Brooklyn, N.Y., for U.S. defendants; David W. McMorrow, Cyril Hyman, New York City, of counsel.

COSTANTINO, District Judge.

On December 23, 1976 the Board of Estimate of the City of New York voted in favor of dividing the section of Brooklyn traditionally known as Crown Heights into two separate community districts (hereinafter CDs). Plaintiffs, who are residents of Crown Heights, seek to have the decision of the New York City Board of Estimate declared null and void. They essentially allege that the state and federal defendants have dispensed public funds in a discriminatory manner, and that the city defendants have purposefully acted to deprive plaintiffs of their constitutional right to equal protection and due process. Complaint ¶ 29–34.

Division of the city into community planning districts is based upon a 1975 revision to the New York City Charter which sought

> to encourage and facilitate coterminous community districts and service districts to be used for the planning of community life within the city, the participation of citizens in city government within their communities, and the efficient and effective organization of agencies that deliver municipal services in local communities and boroughs.

New York City Charter Chapter 69 § 2700 (as amended 1975).

The charter revision directed that the Mayor, after consultation with community groups, present a preliminary community district plan to the Board of Estimate for its approval. In accordance with this provision the Mayor submitted to the Board of Estimate a plan which provided for a single CD for the entire Crown Heights area.[1] At

---

1. This plan had the approval of the subcommittee on coterminality of the Mayor's Charter Implementation Committee, the New York City Planning Commission, and Community Planning District #8 (which includes the Crown Heights area).

Board of Estimate meetings, certain Hasidic members of the community presented an alternate proposal—apparently designed to increase their ability to participate in community decisions—to separate the Crown Heights area into two CDs by dividing it along Eastern Parkway into a northern CD and a southern CD. On December 23, 1976, the Board adopted the alternate plan, thus dividing the area into two CDs.

Plaintiffs allege that the division of the Crown Heights area violates the Fifth and Fourteenth Amendments of the United States Constitution, and that it contravenes the intent and purpose of the Revised City Charter of 1975. On January 6, 1977 plaintiffs' motion for a preliminary injunction, which would have enjoined the Board's action was denied.

Defendants have moved to dismiss the action both on jurisdictional grounds as well as for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R. Civ.P. Since the court has referred to matters outside the pleadings, the parties were directed to submit statements pursuant to Rule 9(g) of the Local Rules of this court, and the 12(b)(6) motion shall be treated as a motion for summary judgment.

## I. *Jurisdiction*

Plaintiffs contend that federal jurisdiction is founded in 28 U.S.C. §§ 1331(a), 1343(3), 1343(4) and 1361. Since these statutes vary in their application to the federal state and city defendants, each group of defendants must be discussed separately.

### A. *The Federal Defendants*

Jurisdiction over federal officers cannot be predicated upon 42 U.S.C. § 1983, and its jurisdictional counterpart 28 U.S.C. § 1343(3), since § 1983 applies only to parties acting under color of state law. Federal officers do not act under color of state law. *Wheeldin v. Wheeler*, 373 U.S. 647, 650, n. 2, 652, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); *Bivens v. Six Unknown Named Agents*, 456 F.2d 1339, 1343 (2d Cir. 1972);

*LaRouche v. City of New York*, 369 F.Supp. 565, 567 (S.D.N.Y.1974); *Ramirez v. Weinberger*, 363 F.Supp. 105, 108 (N.D.Ill. 1973), aff'd 415 U.S. 970, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974). Nor can jurisdiction over the federal defendants be founded upon 28 U.S.C. § 1343, which provides that the "district courts shall have original jurisdiction of any civil action authorized by law . . . to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights." Assuming *arguendo* that a Title VI claim is supportable by plaintiffs' complaint, plaintiffs have failed to exhaust the administrative remedies which are a prerequisite to Title VI relief. *Green Street Ass'n v. Daley*, 373 F.2d 1, 8–9 (7th Cir.), *cert. denied*, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967); *Feliciano v. Romney*, 363 F.Supp. 656, 672 (S.D.N.Y.1973). Exhaustion of administrative remedies is required unless there is a clear showing that the administrative remedies are inadequate or futile. *See Mendozo v. Lavine*, 412 F.Supp. 1105 (S.D.N.Y.1976). As there has been no attempt to make any such showing in the present case, the requirement of exhaustion cannot be waived. A third possible basis for jurisdiction over the federal defendants is offered by the federal mandamus statute, 28 U.S.C. § 1361. Even if this court has threshold jurisdiction under the mandamus statute, it is clear that, in keeping with the standard established in *Lovallo v. Froehlke*, 468 F.2d 340 (2d Cir. 1972), *cert. denied*, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973) mandamus will not lie in this case. Before a writ of mandamus can issue three elements must co-exist: "(1) a clear right in the plaintiff to the relief sought (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question, and (3) no other adequate remedy available." *Lovallo v. Froehlke, supra,* at 343. While the district court properly has original jurisdiction over actions in the nature of mandamus, plaintiffs have failed to specify any "plainly defined and peremptory duty" which the federal defendants have failed to perform. Indeed, not only have

the plaintiffs failed to delineate any unperformed duty owed to them by the federal defendants, but they have not demonstrated that the City, the ultimate recipient of the state and federal funding, has failed to perform a duty owed to them which might somehow be chargeable to the federal defendants. The plaintiffs claim that the geographic division of Crown Heights into community districts which do not coincide with the historic boundaries of the community is violative of the Revised New York City Charter, Ch. 69 § 2700, et seq. (Complaint ¶ 23, 25). The plain language of the New York City Charter, however, indicates that "each community district shall, *so far as feasible*, be within the boundaries of a single borough and coincide with the historic, geographic, and identifiable communities from which the city has developed." § 2701(b)(1) (emphasis added). Thus it is evident that there is no ministerial, nondiscretionary duty within the meaning of 28 U.S.C. § 1361 which any of the defendants have failed to perform. Mandamus, which would lie only as against the federal defendants, is wholly inappropriate and must therefore be denied.

The final possible basis for jurisdiction is found in 28 U.S.C. § 1331(a) which authorizes original federal jurisdiction over civil actions arising under the Constitution of the United States when the amount in controversy exceeds $10,000. The existence of a federal question in the present case arises from the fact that the plaintiffs have alleged a violation of substantive constitutional rights under the Fifth and Fourteenth Amendments. In addition, plaintiffs have alleged that the amount in controversy exceeds $10,000. (Complaint ¶ 4). The financial damage which the plaintiffs might sustain is not readily apparent. The budget which is allotted to a single community district is $45,000 per annum. The division of Crown Heights into a Northern and Southern community district results in a doubling of the yearly budget for the area. Thus, the community shall suffer a $45,000 *increase* in funding should the plaintiffs be defeated in their attempt to enjoin the division of the Crown Heights area (Tr. 67). In the broadest sense of 28 U.S.C. § 1331(a), however, and for purposes of the threshold jurisdictional issue, this court will assume that the possible financial damage to the plaintiff exceeds $10,000. Where the matter in issue is a right or interest which the plaintiff seeks to protect, precise financial valuation may be impractical or impossible. *Cf. Save the Courthouse Committee v. Lynn*, 408 F.Supp. 1323, 1331 (S.D.N.Y. 1975). In such situations the $10,000 jurisdictional prerequisite of § 1331(a) may be met by calculating the amount in controversy from the plaintiffs standpoint in terms of " 'the value of the suit's intended benefit' or the value of the right being protected or the injury being averted." *Kheel v. Port of N.Y. Authority*, 457 F.2d 46, 49 (2d Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972). *See also Gomez v. Wilson*, 155 U.S.App.D.C. 242, 477 F.2d 411, 419–420 (1973). In terms of this formulation, this court concludes that the threshold test for jurisdiction over the federal defendants under 28 U.S.C. § 1331(a) has been met.

### B. *State and City Defendants*

Section 1343(4) of Title 28, U.S.C. does not provide this court with jurisdiction over the state and city defendants since that section requires exhaustion of administrative remedies, or a showing that such exhaustion would be futile. *See Mendoza v. Lavine*, 412 F.Supp. 1105 (S.D.N.Y.1976). Plaintiffs have done neither. Similarly, 28 U.S.C. § 1361 is inapplicable as against the state and city defendants since the terms of the statute limit the availability of federal mandamus relief to officers or employees of the United States or its agencies.

Jurisdiction over the state and city defendants can, however, be predicated upon 28 U.S.C. § 1331(a)[2] and upon 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3). State and city officials acting under color of state law are

---

**2.** See discussion in the preceding section.

subject to suit under 42 U.S.C. § 1983. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Sostre v. Rockefeller,* 312 F.Supp. 863 (S.D.N.Y.1970), *aff'd in part, rev'd in part on other grounds,* 442 F.2d 178 (2d Cir. 1971), *cert. denied sub nom., Sostre v. Oswald,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972); *cert. denied sub nom., Oswald v. Sostre,* 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972). Plaintiff's assertion of a deprivation of due process and equal protection therefore brings this action within the jurisdictional ambit of 42 U.S.C. § 1983 and 28 U.S.C. § 1331(a). Under these circumstances this court can dismiss for want of subject matter jurisdiction only if it appears that the constitutional issues raised by the complaint are so totally frivolous or unsubstantial as to be beyond the power of the court to decide. *See Hagans v. Lavine,* 415 U.S. 528, 539, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). As the Supreme Court stated in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946):

> Jurisdiction . . . is not defeated . . . by the possibility that the averments [in a complaint] might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. ·

*Id.* at 682, 66 S.Ct. at 776.

Giving the broad, factually unsupported allegations of plaintiffs' complaint their most liberal interpretation, plaintiffs have made a colorable showing of a possible deprivation of constitutional rights, thereby vesting jurisdiction in this court. *Cf. Mt.* *Healthy City School District v. Doyle,* 429 U.S. 274, 279, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

## II. *Summary Judgment*

■ The purpose of summary judgment is to eliminate the needless waste of time and effort which would be expended in the trial of a case in which no genuine issue of fact exists. *Zweig v. Hearst Corp.,* 521 F.2d 1129, 1135–6 (9th Cir.), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975); *Briggs v. Kerrigan,* 431 F.2d 967 (1st Cir. 1970). While the party opposing a motion for summary judgment is entitled to have the facts viewed in the light most favorable to him, *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), "mere formal denials and allegations should be pierced upon Rule 56 motions and cannot forestall the award of summary relief." *United States v. Prince,* 348 F.2d 746, 748 (2d Cir. 1965), *citing Dressler v. M V Sandpiper,* 331 F.2d 130 (2d Cir. 1964); *see also Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1319 (2d Cir. 1975).

Plaintiffs have alleged multitudinous causes of action in their complaint most of which are totally unsupported by fact or logic. Plaintiffs have asked for "redress of violations of rights secured by Demonstration Cities and Metropolitan Development Act of 1966, 42 U.S.C. § 3301, *et seq.,* and the regulations thereunder, the Housing Act of 1949, as amended, 42 U.S.C. § 1441, *et seq.,* and the regulations thereunder, 12 U.S.C. § 1715z–1, (e), (f), and (h), and 12 U.S.C. § 1701u." Complaint ¶ 1. Yet plaintiffs have failed to identify any rights created under these acts and have not provided a single clue as to how these rights have been violated. Such unsupported claims are precisely the type of "formal allegations" to which Rule 56 relief is most appropriately applied. *See United States v. Prince, supra,* at 748.

In essence, the balance of plaintiffs' action rests upon two primary claims: First, that the action of the New York City Board

of Estimate was violative of due process, and second, that the action was racially motivated, resulting in the expenditure of public funds in a racially discriminatory manner which denied the citizens of Crown Heights equal protection under the law.

### A. *Due Process*

In order to sustain their claim of deprivation of due process, plaintiffs must define their entitlement to some interest which is encompassed by the Fifth or Fourteenth Amendment's protection of liberty and property. *Shaw v. Hospital Authority of Cobb County,* 507 F.2d 625, 628 (5th Cir. 1975); *Joy v. Daniels,* 479 F.2d 1236 (4th Cir. 1973). "Liberty" and "property" as contemplated by the Constitution are not absolute values; they are subject to "reasonable circumscription." *Rockville Reminder v. United States Postal Service,* 350 F.Supp. 590, 592 (D.Conn.1972), *aff'd,* 480 F.2d 4 (2d Cir. 1973).

Plaintiffs base one aspect of their due process claim upon the loosely formulated theory that their access to municipal services has been cut off due to the division of Crown Heights into two community districts, thereby denying to them a legitimate property right. But as the Supreme Court stated in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577, 92 S.Ct. at 2709. *Cf. Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684. Plaintiffs claim that they have been "divested of Prospect Park, the Botanical Gardens, the Brooklyn Museum, and the main branch of the [Brooklyn Public] library." Yet plaintiffs admit that "these facilities are located in *joint* jurisdictions". (Plaintiffs' 9(g) Statement ¶ 14) (emphasis added). Joint jurisdictions are areas in which both the northern and southern Crown Heights community districts share control. Plaintiffs, who are primarily residents of the northern com-

munity district, also claim to have lost all control over other intra-district services and facilities located within the southern community district. (Plaintiffs' 9(g) Statement ¶ 12). They further allege that their right to participation in certain community facilities, such as schools and hospitals, has been adversely affected, even though they admit that the jurisdiction over these facilities remains unchanged. (Plaintiffs' 9(g) Statement ¶ 18). Essentially, under the plan adopted, each community district has control over purely local facilities within the particular district, while both districts share control over activities which affect the entire Crown Heights area. In short, plaintiffs' deprivation of property claim rests upon a recognition that as to certain local activities their unitary control of the Crown Heights community has been diminished by the division of the area into two community districts. Under the circumstances of this case, however, the expectation of unitary control over the entire Crown Heights area is not a right in which plaintiffs have a justifiable property interest, and this expectation cannot be used as a proper foundation for a due process claim. *Cf. Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. 2701.

Alternatively plaintiffs argue that they were denied due process when the division of Crown Heights into two community districts occurred without the procedural guarantee of "public hearings" as required by the New York City Charter § 2702(d). (Complaint ¶ 34, Plaintiffs' 9(g) Statement ¶ 4–9). However, at the preliminary hearing conducted by the court to consider plaintiffs' motion for preliminary injunctive relief, one of plaintiffs' own witnesses testified that he was present at meetings which were held by the Board of Estimate of the City of New York in which the division of the Crown Heights area into two community districts was discussed. (Tr. 59, 69, 70). It is uncontradicted and manifestly clear that several meetings were held and speakers supporting and opposing the division were fully heard. (Tr. 72, 148–152). Contrary to plaintiffs' interpretation of the New York City Charter, the Charter does

not mandate that the city planning commission follow any specific community recommendation. The Charter simply provides that community interest groups "shall be consulted and their recommendations considered in the preparation of the preliminary community district map." *New York City Charter* § 2702(b). It is evident that this was done, and that the procedural requirement of public hearings was fulfilled.

For the foregoing reasons, plaintiffs, as a matter of law, have failed to make any showing that there is a genuine issue as to any material facts which might be sufficient to support a claim of denial of due process.

### 3. *Equal Protection*

Plaintiffs' equal protection claim is apparently[3] based on the contention that the

3. The word "apparently" is used because plaintiffs' contentions are far from crystal clear. In their Memorandum of Law plaintiffs argue that "No where [sic] do the Plaintiffs allege that they rely upon color as the basis of their claim." (Memorandum at p. 7). Plaintiffs further state that

> [t]he Defendants further argue erroneously argue [sic] that Plaintiffs' Complaint is based upon the motivation of the Board of Estimates [sic]. Not so, the Plaintiff's [sic] Complaint alleged that the Board of Estimates [sic] acted in contravention of the intents, purposes, and clear mandates of the Charter, and by reason thereof violated the constitutional rights of all of the residents of the Crown Heights, depriving them of equal protection of the law and due process of law. *Memorandum* at 8–9.

In support of this contention, plaintiffs then point to ¶ 29 of the complaint.

The guidelines of the New York City Charter with regard to the establishment of community districts, however, are purely discretionary. *See* discussion of mandamus in this opinion, *supra,* pp. 6–8; *New York City Charter* §§ 2701(b)(1), 2702(b). In claiming that the Board of Estimate acted in contravention of these discretionary guidelines, plaintiffs are therefore presumably arguing that the actions of the Board were based upon an impermissible intent. And, despite plaintiffs confusing disclaimers to the contrary, referral to ¶ 29 of the complaint, as suggested by plaintiffs indicates that race is the cornerstone of the claims. That paragraph alleges that "the act of the Board of Estimate and the City defendants was done in violation of law to satisfy a particular minority (the Hasidics)." Paragraph 31 of the complaint further states that "the act of dividing the Crown Heights Community Planning District into two parts . . . was based on race." Finally, paragraph 41 of the complaint alleges that "the division of the historic, geographic and identifiable Community District is racially motivated."

The following somewhat cryptic explanation (at p. 9 of plaintiffs' Memorandum) may contain an inkling as to a specific theory other than racial discrimination which might support plaintiffs' equal protection claim:

> The Plaintiff's [sic] Complant [sic] in paragraphs 19 through 28 and 30 allege the facts that constitute their claim of denial of due process of law. It is respectfully submitted that to adhere to the State statute on Charter revision in every other instance, and then to have the substantive decision of the City Defendants, as alleged in paragraph 22 of the Complaint flow logically from the process, and never diametrically opposed, except in the Crown Heights area is an obvious violation of the constitutional rights of the Plaintiffs, which require equal protection under law.

Perhaps plaintiffs are arguing that the division of Crown Heights violates the equal protection clause of the Fifth and Fourteenth Amendments because the northern district is similarly situated to the southern district yet is disparately treated, or that the community as a whole has been denied equal protection because it has been treated differently than other similarly situated community districts. The former argument has been expressly disclaimed by plaintiffs. (Plaintiffs' Memorandum of Law, p. 9). The latter argument is without merit. The division of Crown Heights has not resulted in the creation of any suspect classification; therefore strict scrutiny of the action is not required. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312–314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *San Antonio Independent School District v. Rodriquez,* 411 U.S. 1, 16, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The defendants have shown rational reasons, stemming from legitimate governmental purposes, for dividing the Crown Heights area. These reasons include the facilitation of efficient delivery of municipal services and the fostering of active community participation by all of the community's residents. *Cf. City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511; *Frontiero v. Richardson,* 411 U.S. 677, 683, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). For example, the original CD would have had two police precincts under its control, whereas now each of the new CDs will have the responsibility of controlling only one precinct.

This court must conclude that, based on plaintiffs' complaint and in the absence of any other meritorious arguments, plaintiffs' equal protection claim is "apparently" based primarily upon race.

division of Crown Heights by the New York City Board of Estimate was racially motivated, and will result in the expenditure of public funds in a racially discriminatory manner. (Complaint ¶ 33, 41). The Supreme Court has recently held that a law or official act cannot be deemed violative of the Equal Protection Clause of the United States Constitution solely because it has a racially disproportionate impact. *Washington v. Davis,* 426 U.S. 229, 241, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). To constitute a denial of equal protection, there must be a discriminatory *intent* or purpose *in addition to* a disproportionate *impact. Arlington Heights v. Metropolitan Development Corp., 429 U.S. 252, 264–267, 97 S.Ct. 555, 50 L.Ed.2d 450* (1977). Plaintiffs here, however, have completely failed to meet even the threshold requirement of an equal protection claim, *viz.* the introduction of facts which would indicate that the division will have even the slightest disproportionate *impact* on Blacks. The proof offered at the preliminary hearing indicates that the two newly created community districts contain essentially the same proportion of Blacks to Whites as was contained in the original single community district. (Tr. 13–14, 120). Indeed the Black residents of Crown Heights still comprise the majority in both the northern and southern community districts. The sole difference between the population make-up of the two new CDs and the original CD is that the proportion of Hasidic Jews to other Whites (and thus to the population as a whole) is greater in the new Southern CD than it would have been in the originally proposed CD.

Viewing it in its most favorable light, plaintiffs' evidence may indicate that the Board of Estimate was "aware" of race when it divided Crown Heights. *Cf. United Jewish Organizations of Williamsburgh v. Carey,* 430 U.S. 144, 180, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977) (Stewart, J., concurring). "[But] such awareness is not, however, the equivalent of discriminatory intent." *Id.* And, absent evidence of disproportionate impact, the "awareness" demonstrated here does not raise a disputed material fact sufficient to bar the grant of summary judg-

ment as to the Equal Protection claims, because "[d]iscriminatory motivation, even if proved, is not in itself a constitutional violation, . . ., and becomes so only when given the opportunity to manifest itself in discriminatory conduct." *Tyler v. Vickery,* 517 F.2d 1089, 1093 (5th Cir.) *reh. en banc* (1975), cert. denied, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976). Nor does this court have "a constitutional warrant to invalidate a state plan, . . . because it undertakes, not to immunize or eliminate the political strength of any group or party, but to recognize it and, through districting provide a rough sort of proportional representation . . .", *Gaffney v. Cummings,* 412 U.S. 735, 754, 93 S.Ct. 2321, 2332, 37 L.Ed.2d 298 (1973). There was no fencing out of the Black population from participation in the political processes and the plan does not minimize or unfairly cancel out Black voting strength. *Cf. United Jewish Organizations of Williamsburgh v. Carey,* 430 U.S. 144, 165, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977).

In the final analysis, as plaintiffs themselves admit, the crux of the numerous claims in this case rests upon plaintiffs' perception that "[t]he citizens of Crown Heights have been offended, and this is the basis of the constitutional question presented in this action." (Plaintiffs' Memorandum of Law, p. 12) "Being offended" does not under the circumstances presented here, rise to the level of Constitutional deprivation. Absent any constitutional violation, it is not the function of the judiciary to pass judgment upon the ultimate wisdom of legislative action. *E. g., Williamson v. Lee Optical Co.,* 348 U.S. 483, 488, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Since plaintiffs have failed to present any disputed material facts upon which a claim for relief could be granted, summary judgment must be granted in favor of all defendants as to all claims.

So ordered.